Good morning. May it please the court, Tim Wilborn for Appellant Perla Stillwater. I think a quick and easy way to dispose of this case is by applying this court's recent decision in the Bruce v. Astrew case. In Bruce, this court pretty much rejected reasons for all practical purposes identical to the ones given in the Stillwater case for the rejection of the lay witness testimony. Now, in this case, counsel, since time is limited, let me just pose a question about her credibility. It is true, isn't it, that although she had problems with weight and so forth, she attended law school? She attended law school in the early 1980s, Your Honor. In 1994, subsequent to her completion of law school and subsequent to an extended period of time being a stay-at-home mother, she fell and hit her head and injured herself. So her completion of law school in the early 1980s has really no bearing on her current either physical or mental capacity. All this is post-law school. Everything in this case is post-law school by years and years. All right. Thank you. Let me ask a question. You gave us the quick way to dispose of this case, and that may be true, but the question is, if we did that, would it seem to be in the interest of judicial economy to also address everything else in the case so that we're not running around in circles after the ALJ deals with the lay witness issue? So it might be helpful to talk about the rest of it. Okay. Well, one of the big issues is the claimant's own credibility. The ALJ rejected her credibility by saying that she was not compliant with medical treatment. I've argued extensively in my brief that she was as compliant as she possibly could be. The district court found that the lack of treatment for her balance and dizziness and nausea symptoms after 1999 amounted to a clear and convincing reason for rejecting her testimony. But if we look at the excerpts, page 435, it's explained that the reason she didn't continue receiving treatment for that condition is because her doctor, F. Owen Black, who happens to be probably, I don't know, one of the most preeminent specialists in this field, told her he couldn't do anything more for her. And her other doctor, Dr. Grimm, said the same thing. And so here she is. She's got two of the most renowned specialists in the field saying, you know, you have this problem and we can't help you. What is she really supposed to do? I think it was unreasonable for the district court to hold that against her and find that that was a clear and convincing reason to reject her testimony. Administrative law judge Jones also faulted her for not receiving anything more than conservative treatment. Well, with regard to the balance and the high drops issue, I'll call it, there's no treatment for it. It just can't be treated. With regard to the brittle diabetes, she was receiving, she's checking her blood sugar level six times a day and injecting insulin, and she's on a very limited budget. She couldn't afford food. She was relying on her church to give her food. And when you're, you know, this is the perfect situation where you have to say beggars can't be choosers. While it's true that she wasn't eating fresh fruit and vegetables as much as maybe her doctors would have wished that a diabetic would be doing, it's also true that she simply had no access to that. She was broke. She has been disabled and unable to work for a number of years now, since 1995, when she tried to work for a few months after this injury, and she couldn't do it. And that's why the injury was in 94. She last worked in 95. And so she's been very poor for this entire period, and she simply doesn't have the financial capability of making any better compliance than what she has. So I think, you know, if we look at all the reasons that the administrative law judge gave for rejecting her testimony, they fail. He also said that she was doing a lot of physical activity that seemed inconsistent with her situation. But he also said that she wasn't doing the exercise she was supposed to do. Well, that's what I call damned if you do and damned if you don't. She was trying to be as active as possible. Apparently, she lives somewhere here in Portland where it's a downhill walk for a number of blocks from her house. And then at the bottom of the hill, the MAX train is there, and she gets on it and rides back up the hill. And that is her exercise. She's extremely obese, and she tries to do that for exercise to comply with the doctor's recommendations that she exercised. But she can't do it every day, and she can't walk both directions. She can't go back up the hill. She's actually very limited.   And I believe that this Court, in the Verdigan case, which I cite in my brief, cataloged a bunch of activities that the disabled claimant in Verdigan was actually doing. And I believe that those activities are more extensive than Ms. Stillwater's activities. All right. On another issue, what about the rejection of the lay witness testimony? Would you comment on that? Yes. The administrative law judge actually found the lay witnesses credible. He found them credible, but he rejected them because they weren't, in his opinion, adequately supported by the objective evidence. Is that legally correct? That is absolutely incorrect. And why not? Well, the entire purpose of lay witness testimony is to supplement the medical records. When you go to a doctor, you're probably there, based on my experience, five, ten minutes. I mean, the doctor hardly talks to you. The doctor doesn't sit around for eight hours a day watching what you do. And so you can tell the doctor what your day is like, but the doctor has to accept your word for it. In contrast, a lay witness doesn't have to accept your word for anything. I mean, we think you're correct. What are you asking for in this case? What would you like this Court to do? Reverse. In reversing, there are two options, well, three options. You can simply reverse with instructions to reconsider. You can reverse with instructions to credit certain testimony as true. Or you can reverse and order an award of benefits. And that's a tough one. For me to tell you which one of those three you should do, because the Ninth Circuit case law on that is in flux. I think it would be fair to characterize the Court as having warring panels on the issue of crediting testimony. Well, you've got judges who don't want to try facts, and you've got judges who are willing to do it, maybe. I don't know. You do. But we can't try the facts, can we? No. The facts are up to the agency to determine. And the facts are in the record. This Court can look at the facts. For example, the Court can apply the three-part test that we call the Smolin test. If the judge improperly rejected the evidence and the claimant would be disabled if the evidence was credited and there are no further issues that need to be resolved, those are the three parts, then this Court can credit the testimony as true and find the claimant disabled. Okay. You're about out of time. We have a motion to adjourn the hearing. So we will give you a minute of rebuttal after we hear from the government. Good morning, Your Honors. I'm Daphne Benet, appearing for the Commissioner of Social Security. In light of Bruce, I would like to address the ALJ's rejection of the lay witness testimony, and I pointed out this as supplemental authority in my 28-J letter to the Court. Supplemental authority being the Bruce case? Right. And I noted in that, in my supplemental authority, that at page 46 of the brief, the Commissioner ---- Would you please speak up? Oh, sorry. I conceded there in the letter that ---- All you have to do is pull the mic down. Oh, down. Thank you. So that it will pick you up, pick up your voice. Thank you, Your Honor. I conceded there that this Court has held that an ALJ may not reject a lay witness statement because he or she is not knowledgeable in the medical vocational fields. Isn't that what happened here? Is that what happened here? I believe the ALJ did do that, Your Honor. Did do that? Yeah. So therefore, we have to remand. So the government is conceding that we have to remand. I don't think so, Your Honor. And the reason for that is I think it should be considered harmless error under the Valentine case. And I know that in my 28-J letter, too. And that's where this Court found harmless error when an ALJ erred with respect to some, but not all, of the lay witnesses. In this case, the ALJ erred with respect to the patient and there are no other reasons. So even though the ALJ erred with respect to that reason, and like Bruce, this case is distinct. But isn't that a little different? When the judge says I discredit a treating doctor for the following four reasons, and two of them are no good but two of them are good, you've still discredited the doctor. But here, if you have a witness who he completely discredited and there's no other reason. So if it weren't for that reason, he would credit him. Isn't that a different problem? Well, I think, Your Honor, here, though, like in Bruce, the court found that all the reasons were inadequate. In Valentine, this court found that there were still some good reasons. All right. What other reasons did he give? And so the other reasons here that I think, and that's what makes Bruce distinguishable here, is that the ALJ also based his rejection on an additional reason, that there was more reliable evidence of record for medical professionals. That's the same reason. Well, but medical professionals are the ALJ is making credibility determination there. And he's saying that he's accepting their statements over the lay witnesses. Because they're not doctors, which is the same reason again. Well, but I think, though, given that additional reason that the ALJ gave, you can still draw a reasonable inference that by that ALJ statement in that regard, that he's rejecting the lay witness' statements as inconsistent with the objective evidence, such as the opinions of the non-examinee state agency psychologist, Dr. Lebray. But if he did err in rejecting the lay witness' testimony, wouldn't that affect his determination that Ms. Stillwater has a severe mental impairment? But she still has to produce objective medical evidence. That's how you establish a mental impairment, Your Honor. And you can't do that by lay witness' testimony. All I'm suggesting is that might affect his finding. We know the lay witness' testimony should have been admitted, regardless of the objective medical evidence. Even though you need the objective medical evidence, I'm suggesting that excluding all that evidence could well have affected how the ALJ is finding about a mental impairment. Well, you're correct, Your Honor, to the extent that the ALJ finds first that there's objective medical evidence of a medically determinable impairment. You have to do that through clinical signs and findings. And so the lay witness' testimony cannot establish a medically determinable impairment. It's only after you have other evidence in the record that establishes that then the ALJ would consider the lay witness' statements. And so let me ask about some of the other issues in the case. First of all, the ALJ completely discredited her main treating physician, Dr. Greenberg. And I understand to some degree why he did that with respect to issues outside his specialty. But what about with issues inside his specialty? He was her diabetes doctor. She had diabetes. He had things to say about how she was controlling her diabetes and what kind of treatment she was being given and whether that treatment was working or not working. And how could he be discredited? There's nothing in the record inconsistent on the diabetes question with regard to what he said. And yet he said, I'm giving it no weight. Well, I think, Your Honor, that ALJ's focus was essentially that, look, Dr. Greenberg was giving an opinion that Ms. Stillwater was essentially disabled based on her chronic back condition. Well, that was part of it. But there was also a set of claims about how the diabetes was affecting her cognitively and how it was affecting her eyesight and how it was affecting her fatigue level and how it was affecting other aspects of her life. And I really fail to see what the basis for discrediting Dr. Greenberg on those questions is. Well, you can consider doctor specialization, Your Honor. But even if, even if, assuming for purpose of argument that that reason was defective, the ALJ still gave other reasons for discrediting Dr. Greenberg's opinion. He did, but they weren't related to the diabetes. That's what I'm trying to say. They were relating to why he perhaps was not believable as to her back and issues that were not within his specialty. But he considered things such as, you know, whether Dr. Greenberg's opinion had substantial support from other evidence in the record. Well, in fact, then there were two examining doctors, or I guess reviewing doctors, who essentially came to the same conclusions, and he discredited them, too.  Yes, who are appointed by, who are neutral people, and they came to essentially the same conclusion, and then they were discredited, too. Right. But I believe that the ALJ still gave sufficient reasons for rejecting those opinions. And as I pointed out — You know, what the sense one gets from the record as a whole is that the ALJ thought, this woman went to law school and had diabetes 20 years ago, so the, and people, some people with diabetes can operate, therefore the diabetes can't be relevant to anything. And he just wasn't listening to anything to the contrary. And somehow there should have been somewhat more, she should have been doing something else about her diabetes than what she was doing, although he doesn't say why. Well, the ALJ's interpretation of evidence wasn't that, Your Honor. For example, with respect to the fact that she completed law school, the ALJ, I think, legitimately considered at year 29 that the fact that neither obesity nor her diabetes prevented her from completing law school. But diabetes is a progressive disease, and this was 20 years ago. So I don't understand the relevance of it. Well, I believe the ALJ's interpretation is entitled to deference. I'm sorry? I believe his interpretation is entitled to deference, Your Honor. Not if it's based on something that doesn't make any sense. He gets deference, all right, but when we look at it, when we look at the record to see what the basis of his decision is, don't we have to consider that? Consider what, Your Honor? The basis that he states, I conclude this because of. Right. And when you see that he's ignored something that can't be ignored, don't you have a problem? Well, I don't think he ignored her diabetes, Your Honor. I think he interpreted the evidence as saying that even with her diabetes, she was still able to complete certain activities. Let me tell you something about diabetes that you know. Sometimes people go blind. Everybody who gets diabetes doesn't go blind, but sometimes they do, and the blindness is caused by the diabetes. That's the point the judge was making. And there's a progressive disease, and it affects different people in different ways. And on this record, I think you want to tell us why his opinion ought to be given deference, because it's a valid opinion. And aren't there some defects? Do you see the defects? I guess I don't see them, Your Honor. Well, you say she's a diabetic lawyer, and many lawyers practice even though they're diabetic. And everybody has to say, that's true. But how about the progression of her diabetes? We don't know, do we? We don't know that he considered it. On this record, tell us why we know he considered it. Well, I think you can tell that he considered it, at least with respect to activities of daily living and in connection with the argument about that the ALJ did not consider sustainability. That is tied to one of the grounds for rejecting a claimant's subjective complaints, which is spending a substantial part of your day engaging in activities that are transferable to a work setting. But the ALJ did not rely upon that basis, Your Honor. He relied on the second ground for rejecting a subjective complaint. So the ALJ wasn't saying that she's necessarily able to sustain activities with her diabetes. He's saying that her activities that she was engaging in, even considering her diabetes, are inconsistent with her allegations that she was totally limited by her symptoms, such as fatigue and pain. So what should be this Court's bottom line? The bottom line, Your Honor, is I respectfully submit the Court should affirm the ALJ's decision. Okay. You've used up your time. Thank you. Thank you. I will give you one minute in rebuttal, literally one minute. Talk fast. A quick point on this issue of signs, symptoms, and laboratory findings. What a claimant reports is a symptom. What a doctor observes is a sign. And in this case, all this word salad stuff and all these mental issues, those symptoms, as reported by the claimant, also were observed by the doctors. And so they are signs. They are properly medically determined. The other issue is that the lay witness's descriptions are not, as opposing counsel has asserted, inconsistent with the doctor's assessments. They are merely based on different observations, different and more extensive. There's no inconsistency between the two. How about a testimony about limitations on ability to stand or sit and her activity? Was there anything inconsistent in that? I don't believe so, Your Honor. The doctors assessed her, her own treating physician who saw her over a period of years, Dr. Greenberg, assessed her with disabling limitations, and she said that she had disabling limitations. I believe that's consistent. Even Judge Schloss, who was the first administrative law judge, stipulated that Dr. Greenberg's assessment does equate to disability. Okay. Thank you very much. Thank you, counsel. The case of Stillwater v. Astro is submitted. We will go on to Nerman v. Astro. I gather we have got to see both of you many times this morning.
judges: Farris, Nelson D. W., Berzon